UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMERO MOSES #231885,

    Plaintiff,                                   Hon. Janet T. Neff

v.                                                   Case No. 1:15-cv-260

MELINDA BRAMAN, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion for Summary Judgment. (Dkt. #8). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **denied**.

## BACKGROUND

Plaintiff alleges the following his complaint. (Dkt. #1). On May 20, 2014, Plaintiff filed a grievance against the librarian at the Richard Hanlon Correctional Facility (MTU) where he was then incarcerated. On May 27, 2014, Plaintiff submitted to MTU Deputy Warden Melinda Braman (and others) a proposal regarding certain court rulings concerning Ramadan diet claims. On June 9, 2014, Braman denied Plaintiff's May 20, 2014 grievance. The following day, Braman secured Plaintiff's transfer to the Kinross Correctional Facility (KCF). This transfer constituted a danger to Plaintiff's health and safety and precluded visitation by Plaintiff's family. Plaintiff was later informed that he was transferred because he was perceived to be a litigator. Plaintiff initiated the present action against

Deputy Warden Braman and Transfer Coordinator Charles Traylor. Plaintiff's claim against Traylor was subsequently dismissed. Defendant Braman now moves for relief on the ground that Plaintiff has failed to properly exhaust his available administrative remedies.

## LEGAL STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of

the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth

Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

Michigan Department of Corrections Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P. If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance. *Id.* The grievance policy provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R. The prisoner must submit the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

On June 16, 2014, Plaintiff submitted a Step I grievance stating, in part, "this grievance is properly filed against Richard Hanlon Correctional Facility (MTU) transfer Coord. Traylor & Deputy Warden Melinda Braman for retaliatory transfer." (Dkt. #16 at PageID.117). Plaintiff pursued this

grievance through all three steps of the grievance process. (Dkt. #16 at PageID.122-28; Dkt. #22 at PageID.172-80). There appears to be a question, however, whether Plaintiff timely filed his Step III grievance.

On September 21, 2015, Richard Russell, the Grievance Section Manager, issued a memorandum stating that Plaintiff's Step III grievance was untimely filed. (Dkt. #22 at PageID.181). Russell asserted that Plaintiff's Step III grievance was not received by his office until June 25, 2015, 185 days after Plaintiff received notification that his Step II grievance had been denied. (Dkt. #22 at PageID.181). This assertion is contradicted, however, by two significant items of evidence. First, Plaintiff has submitted a copy of his Step III grievance which is date stamped as "received" by the "Office of Legal Affairs" on October 3, 2014, which would make Plaintiff's Step III grievance timely filed. (Dkt. #22 at PageID.180). Second, the MDOC Prisoner Step III Grievance Report submitted by Defendant states that Plaintiff's Step III grievance was received on October 3, 2014. (Dkt. #9 at PageID.79). Thus, there exists a question of fact as to whether Plaintiff properly exhausted his administrative remedies precluding summary judgment.

Finally, Defendant's argument that she is entitled to relief because "Moses has not filed any Step III grievance appeals while incarcerated at MTU" is unpersuasive. Defendant has failed to explain how Plaintiff could be expected to file any grievance "while incarcerated at MTU" given that he was transferred to KCF long before having had an opportunity to file a grievance regarding his allegedly retaliatory transfer. To the extent that Defendant is instead attempting to assert that Plaintiff was required to submit his grievance to the MTU grievance coordinator, the result is the same.

The relevant grievance policy does state that a Step I grievance is to be submitted to the Grievance Coordinator "designated for the facility, field office, or other office being grieved." Mich.

Dep't of Corr., Policy Directive 03.02.130 ¶ V (effective July 9, 2007).  While it appears that Plaintiff instead submitted his Step I grievance to the Grievance Coordinator at KCF, such does not advance Defendant's position.  As noted above, Plaintiff's Step I grievance clearly states that it was being asserted against two individuals at MTU.  While this arguably violated the policy provision quoted above, Plaintiff's grievance was not rejected on this basis.  Thus, even assuming Plaintiff submitted his Step I grievance to the incorrect individual such affords Defendant no relief.  *See, e.g., Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010) (where prison officials declined to enforce a grievance-related procedural requirement, defendant cannot rely on the prisoner's failure to comply with the procedure in question to obtain dismissal on exhaustion grounds).

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendant's Motion for Summary Judgment, (Dkt. #8), be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                 Respectfully submitted,

Date:  January 21, 2016                        /s/ Ellen S. Carmody
                                                     ELLEN S. CARMODY
                                                     United States Magistrate Judge